Filed 7/30/13  P. v. Willis CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY EARL WILLIS,<br><br>    Defendant and Appellant. | 2d Crim. No. B241105<br>(Super. Ct. No. TA117396-01)<br>(Los Angeles County) |

Johnny Earl Willis appeals a judgment following conviction of first degree murder, attempted murder, and attempted robbery, with findings of personal firearm use and acts committed to benefit a criminal street gang.  (Pen. Code, §§ 187, subd. (a), 189, 664, 187, 664, 211, 12022.53, subds. (b)-(d), 186.22, subd. (b)(1)(C).)[1]  We conclude that the trial court did not abuse its discretion by denying Willis's motion to sever the charged counts, and affirm.  (§ 954; *People v. Thomas* (2012) 53 Cal.4th 771, 797-801.)

---

[1] All further statutory references are to the Penal Code.  References to section 12022.53 are to the version in effect prior to January 1, 2012.

### FACTS AND PROCEDURAL HISTORY

*Attempted Murder and Attempted Robbery*

*(Counts 2 and 3)*

Marcus Benton, a member of the "20 Crip" criminal street gang, had been friends with Willis for six months. Benton knew Willis as "J-Bam," a member of the "Bee Bop Watts" criminal street gang.

On December 16, 2010, Benton called Willis, seeking to buy a firearm. The two men agreed to meet near 96th Street and Central Avenue in Los Angeles, an area Willis assured Benton was claimed by the Crip gang. During an arranged meeting that night, Willis pointed a gun several inches from Benton's face, demanded his money, and stated: "Give me the money, blood." Benton turned and ran toward the street. As he ran, he heard five gunshots. When he reached the street, Benton collapsed with five gunshot wounds to his back and leg. When Police Officer Jesus Garcia found him lying in the street, Benton stated that "J-Bam from Bee Bop had shot him."

Los Angeles Police Officer Francis Coughlin testified as a criminal street gang expert witness regarding the Bee Bop Bloods gang. He stated that the Bee Bop Bloods claimed the area of 96th Street and Central Avenue in Los Angeles. Coughlin described Willis's gang-related tattoos, including the words "Bee Bop," and opined that Willis committed the crimes against Benton to benefit the Bee Bop Bloods gang.

*Murder*

*(Count 1)*

In 2011, Shontay Burkhardt and her female cousins had a dispute regarding "Facebook stuff." On March 28, 2011, Burkhardt physically confronted cousin Ebony McBride and her sisters outside McBride's home. Joseph Herd, Burkhardt's boyfriend, attempted to break up the altercation, but Willis, Ebony's boyfriend, demanded that the fight continue. A neighbor also saw Herd and Willis fighting.

Willis then walked inside the home and returned with a firearm. As Herd prepared to enter the vehicle in which he and Burkhardt arrived, Willis fired the weapon

2

and shattered the back window. Herd left the vehicle and ran down the street with Willis in pursuit. Willis fired the weapon two more times, fatally striking Herd.

At trial, Willis testified and denied meeting or shooting Benton. Willis stated that he attended a party in San Pedro at the time Benton was shot. He also denied membership in Bee Bop Bloods, and stated that he belonged to "Bee Bop Money Crew," a group that "shared [the members'] money."

Willis also testified that he shot Herd in self-defense after Herd "body slammed" him and "punch[ed]" him in the face. Willis stated that he shot Herd twice as Herd walked toward him; Herd then turned and ran.

Doctor Kevin Booker evaluated Willis and opined that he suffers from moderate depression and severe chronic post-traumatic stress disorder. Booker also opined, based upon a hypothetical similar to the incident involving Herd, that Willis would misperceive Herd's actions as life threatening.

The jury convicted Willis of murder (count 1), attempted murder (count 2), and attempted robbery (count 3). (§§ 187, subd. (a), 189, 664, 187, 664, 211.) It also found that he personally used a firearm causing great bodily injury or death, and committed the attempted murder and attempted robbery to benefit a criminal street gang. (§§ 12022.53, subds. (b)-(d), 186.22, subd. (b)(1)(C).) The trial court sentenced Willis to a prison term of 90 years to life, consisting of 25 years to life for murder, plus 25 years to life for the firearm enhancement (count 1), and 15 years to life for attempted murder, plus 25 years to life for the firearm enhancement (count 2). Pursuant to section 654, the court imposed but stayed sentence for attempted robbery (count 3) and the criminal street gang enhancements (counts 2 and 3).

Willis appeals and contends that the trial court abused its discretion by denying his motion to sever count 1 from counts 2 and 3.

*DISCUSSION*

Willis argues that the trial court's denial of his severance motion deprived him of his California and federal constitutional rights to a fair trial and to due process of law. Specifically, he asserts that the "Bee Bop" gang evidence was prejudicial and unfairly

3

affected adjudication of the murder count. Willis relies upon the court's statements during argument of the motion that the gang evidence was "substantially prejudicial" regarding the murder count. He adds that reversal is required pursuant to any standard of review.

Section 954 permits joinder of "'two or more different offenses of the same class of crimes or offenses.'" (*People v. Thomas*, *supra*, 53 Cal.4th 771, 798.) Although the requirements for joinder are satisfied, the trial court "in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . ." (§ 954.) On appeal, defendant must establish that the court's ruling was an abuse of discretion. (*Thomas*, at p. 798.) Defendant must show a clear showing of prejudice to establish an abuse of discretion. (*Ibid.*)

In determining whether the trial court abused its discretion, we consider whether evidence of the two sets of offenses would have been cross-admissible if they had been tried separately. (*People v. Thomas*, *supra*, 53 Cal.4th 771, 798.) If the evidence is cross-admissible in separate trials, then joinder is not prejudicial. (*Ibid.*) If the evidence is not cross-admissible, we next consider whether the benefits of joinder outweigh any prejudicial effect of the other crimes evidence. (*Ibid.*) Thus, we consider whether 1) some charges are likely to unusually inflame the jury against the defendant; 2) a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and 3) one charge is a capital offense, or the joinder of the charges converts the prosecution into a capital case. (*Id.* at pp. 798-799.)

The trial court did not abuse its discretion by denying the severance motion. As Willis concedes, the three counts were "of the same class" pursuant to section 954. (*People v. Stanley* (2006) 39 Cal.4th 913, 933-934 [murder, attempted murder, and robbery are crimes of the same class pursuant to section 954].) Moreover, we need not decide whether evidence of the crimes would have been cross-admissible in separate trials because cross-admissibility is not dispositive whether the trial court abused its discretion in denying severance. (*People v. Myles* (2012) 53 Cal.4th 1181, 1201; *People v. Thomas*, *supra*, 53 Cal.4th 771, 798.)

4

The murder and attempted murder charges involved Willis running after and shooting unarmed men. Evidence of each crime was strong; Benton and the witnesses to Herd's murder knew Willis. Benton informed police officers that J-Bam from Bee Bop shot him. Benton also possessed a note stating J-Bam's name and phone number, among others. Joinder did not involve joining a weak case with a strong case or a capital case. (*People v. Thomas*, *supra*, 53 Cal.4th 771, 799.)

Evidence regarding the Bee Bop gang was relatively brief and filled only 36 pages of trial transcript. The trial court instructed with CALCRIM No. 1403, limiting the jury's consideration of the gang evidence to counts 2 and 3 and the gang enhancement. The court also instructed that Willis was not involved in the gang predicate offenses and that the offenses were relevant only to establish that Bee Bop was a criminal street gang. We presume that jurors generally understand and follow instructions. (*People v. Myles*, *supra*, 53 Cal.4th 1181, 1212.)

In view of the strong evidence in each case and the limiting jury instructions, the gang evidence was not likely to influence the verdict in the Herd murder count. Weighing against the small risk of prejudice are the substantial benefits of joinder that include efficiencies in the trial and appellate courts. (*People v. Thomas*, *supra*, 53 Cal.4th 771, 800.) Willis has not established that the trial court abused its discretion.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

5

Allen J. Webster, Jr., Judge

Superior Court County of Los Angeles

_____

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Toni R. Johns Estaville, Deputy Attorney General, for Plaintiff and Respondent.